# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS ANDREW CENSKE, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> UNITED STATES OF AMERICA (Federal ) <br> Bureau of Prisons officials in USP Terre ) <br> Haute), ) <br> ) <br> Defendant. ) | Case No. 1:16-cv-02761-TWP-MJD |

### ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on a Motion for Summary Judgment filed by Defendant the United States of America. Plaintiff Thomas Andrew Censke ("Censke"), a prisoner at the United States Penitentiary in Terre Haute, Indiana ("USP Terre Haute"), filed this Federal Tort Claims Act ("FTCA") action after correctional officers attacked him and his cellmate on or about December 16, 2013 and failed to provide adequate medical treatment. He seeks compensatory damages. The United States asserts that Censke's claim is barred by the statute of limitations, 28 U.S.C. § 2401(b), and seeks resolution through the entry of summary judgment. Censke has opposed the Motion and the United States has replied and supplemented its reply on August 8, and August 14, 2017, as requested by the Court. Censke filed a surreply on September 11, 2017. For the reasons explained in this Entry, the United States' Motion for Summary Judgment, dkt. [22], is **granted.**

### I. BACKGROUND

The following statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the

light reasonably most favorable to Censke as the non-moving party with respect to the motion for summary judgment. *See Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 150 (2000).

On or about December 16, 2013, Censke was incarcerated at USP Terre Haute when two correctional officers entered his cell and attacked him and his cellmate. After first fighting them, the officer then deployed mace. A few minutes later, additional correctional officers, including a lieutenant, unlocked the cell door, entered and began to kick and punch Censke and his cellmate. Following the incident, Censke was placed in handcuffs and shackles for three days. He was given inadequate medical treatment for the injuries that he suffered. On October 12, 2016, Censke filed a Complaint seeking monetary compensation for his damages, under the FTCA.

Censke was incarcerated at USP Terre Haute from July 25, 2013 until September 15, 2014, when he was transferred to USP Lee via brief stops at FTC Oklahoma and USP Atlanta. Dkt. [29-1]. He was confined at USP Lee from September 30, 2014 until October 6, 2015. He then was confined at USP Atlanta from October 6, 2015 until October 16, 2015, and at FTC Oklahoma from October 16, 2015 until November 19, 2015. He arrived at USP McCreary on November 9, 2015, and stayed there until February 5, 2016. *Id.*

Censke signed and dated a SF-95 "Claim for Damage, Injury, or Death" form on December 7, 2015, and placed it in the outgoing mail, in the door of his cell, for an officer to pick up, in the USP McCreary Secured Housing Unit. Dkt. [28], p. 1; dkt. [22-4].[1] The SF-95 alleges that Censke was assaulted in F2 Unit, USP Terre Haute, by Bureau of Prison staff, and held in restraints for three days. Dkt. [22-4]. Under "Date and Day of Accident," Censke wrote "12-16-14," *id.*, although he alleges in his Complaint that the incident actually occurred on December 16, 2013. Dkt. [1]. Censke addressed the tort claim to the Central Office in Washington, D.C. Dkt. [28], p.

---

[1] Censke's affidavit erroneously states that his tort claim was dated "12.7.16." Dkt. [28], p. 1.

1. Prior to mailing the tort claim, he asked staff at USP McCreary for the address of the North Central Region but nobody would provide it. *Id.* at p. 2.

The Bureau of Prisons ("BOP"), more specifically the North Central Regional Office, received the tort claim from Censke on February 16, 2016. Dkt. [22-2]; dkt. [22-4]. The BOP denied Censke's Notice of Tort Claim on April 22, 2016, based on the lack of any personal injury. Dkt. [1-1], p. 1; dkt. [22-3]. In the denial of the tort claim, the BOP notified Censke of the applicable six month deadline to file suit. *Id.* Censke filed this action on October 12, 2016.

## II. SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris,* 127 S. Ct. 1769, 1776 (2007).

## III. DISCUSSION

The United States argues that this action is barred by the applicable two year statute of limitations, 28 U.S.C. § 2401(b), based on the doctrine of sovereign immunity.

**A.  Legal Standard**

The United States, pursuant to the doctrine of sovereign immunity, may not be sued except by its consent, "and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Testan,* 424 U.S. 392, 399 (1976) (internal quotation

omitted). The FTCA is a limited waiver of sovereign immunity, allowing, in relevant instance, federal inmates to "bring suit for injuries they sustain in custody as a consequence of the negligence of prison officials." *Buechel v. United States*, 746 F.3d 753, 758 (7th Cir. 2014). Section 2401(b) of Title 28 sets forth the statute of limitations applicable to the FTCA. Under that section,

> [a] tort claim against the United States shall be forever barred unless it is presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented.

28 U.S.C. § 2401(b).

**B.    Analysis**

The incident alleged in the Complaint occurred and Censke's claim accrued on December 16, 2013. Therefore, to be timely, a tort claim against the United States would have to have been presented in writing to the BOP on or before December 16, 2015. Censke's tort claim was received by the BOP on February 16, 2016, two months late.

Censke's tort claim was denied on April 22, 2016. The Complaint initiating this lawsuit was filed on October 12, 2016 (and was signed on September 22, 2016). Therefore, Censke filed this action within six months of the date his tort claim was denied, but he did not present his claim to the appropriate federal agency within two years of the date the claim accrued. It is on this basis that the United States contends the tort claim was not timely filed.[2]

---

[2] The Court appreciates the United States' supplemental briefing filed on August 8, 2017, demonstrating that although the statute is not a model of clarity, the FTCA provides that a tort claim against the United States 'shall be forever barred' unless it is presented to the 'appropriate Federal agency within two years after such claim accrues' *and* then brought to federal court 'within six months' after the agency acts on the claim." *United States v. Kwai Fun Wong,* 135 S.Ct. 1625, 1629 (2015) (emphasis added) (quoting 28 U.S.C. § 2401(b)); *see also Khan v. United States,* 808 F.3d 1169, 1172 (7th Cir. 2015) (affirming dismissal of FTCA complaint even assuming plaintiff filed lawsuit within six months of denial of tort claim because her tort claim had not been presented to the federal agency within two years of its accrual). Censke's argument in his surreply that his claim should be deemed timely because he filed his lawsuit within six months of the denial of his claim is not persuasive in light of *Wong* and *Khan.* He is correct, however, that *Wong* approves the equitable tolling of the two FTCA limitations periods when applicable.

Censke states that he dated his tort claim on December 7, 2015, and placed it in the outgoing mail at USP McCreary. He states in his affidavit that he did not mail the tort claim to the North Central Region. Rather, he mailed it to the Central Office, apparently knowing that it was supposed to be sent to the North Central Region. There is no evidence, however, of when the Central Office, if it was indeed mailed there, received the tort claim. The relevant BOP tort claim regulation, 28 C.F.R. § 543.32(b), provides the following information:

> Will I be notified if my claim is transferred? Yes. If your claim is improperly filed, you will be notified by the responsible office that your claim was transferred to another regional office, the Central Office, a training center, or another agency.

28 C.F.R. § 543.32(b).

Censke does not allege that he received a notice verifying that his claim was, in fact, received first in the Central Office, and then transferred to the regional office. Therefore, he has not provided evidence sufficient to create a genuine issue of fact regarding the date the tort claim notice was received by the BOP. The date Censke's claim was received by the North Central Regional Office was February 16, 2016. Dkt. [22-4].

### 1. Waiver

Censke first argues that the United States has waived any timeliness argument because his tort claim was not denied as untimely. This contention fails, however, because on his tort claim, Censke wrote the incorrect date of the incident as December 16, 2014. Therefore, based on that date, because the tort claim was received on February 16, 2016, the BOP would have no reason to believe that the tort claim was not filed within two years of the incident.

### 2. Common Law Mailbox Rule

Censke next argues that the fact that he mailed his tort claim before the deadline should render his claim timely. The United States first argues that the common law mailbox rule does not

5

render Censke's tort claim timely. The common law "mailbox rule" allows a legal presumption to arise when a letter is properly addressed and mailed, that "it reached its destination in usual time and was actually received by the person to whom it was addressed." *Boomer v. AT&T Corp.,* 309 F.3d 404, 415, n. 5 (7th Cir. 2002) (internal quotation omitted).

The applicable regulation, however, states that "a claim shall be deemed to have been presented when a Federal agency *receives* from a claimant...an executed Standard Form 95 or other written notification of an incident, accompanied by a claim for money damages in a sum certain...." 28 C.F.R. § 14.2(a) (emphasis added). "[S]ubstantial authority confirms that presentment occurs not when a claim is mailed but when it is received by the agency." *Overcast v. U.S. Postal Service,* 49 Fed.Appx. 63, 65, 2002 WL 31260630 (7th Cir. Oct. 7, 2002); *see also Drazan v. United States*, 762 F.2d 56, 58 (7th Cir. 1985) ("the district court was quite right to hold that mailing is not presenting; there must be receipt"). Therefore, the common law mailbox rule does not control under these circumstances.

### 3. **Prison Mailbox Rule**

The Court requested that the United States further supplement its brief to discuss the applicability of the *prison* mailbox rule recognized since *Houston v. Lack,* 487 U.S. 266 (1988). Dkt. [37]. The prison mailbox rule provides that court filings are "deemed filed at the moment the prisoner places it in the prison mail system, rather than when it reaches the court clerk." *Taylor v. Brown,* 787 F.3d 851, 858 (7th Cir. 2015) (internal quotation omitted). "Although the prison mailbox rule was first applied to notices of appeal, *see Houston,* 487 U.S. at 276, 108 S.Ct. 2379, the rule applies to all district-court filings save for 'exceptional situation[s].'" *Id.* at 858-59 (internal quotation omitted). The United States quotes *Vacek v. United States Postal Serv.,* 447 F.3d 1248, 1252 (9th Cir. 2006), for the proposition that "virtually every circuit to have ruled on

6

the issue has held that the mailbox rule does not apply to [FTCA] claims, regardless of whether it might apply to other federal common law claims." But, *Vacek* was not a prisoner case. The United States also directs the Court to *Massey v. United States,* 312 F.3d 272 (7th Cir. 2002), in which although the prisoner mailbox rule was not at issue, the court focused on the date the tort claim notice was stamped received by the federal agency rather than the date it was signed by the prisoner.[3]

The Court has not found any binding authority that would apply the prison mailbox rule to administrative filings such as a federal tort claim. *See Bonilla v. U.S. Dept. of Justice*, 535 Fed.Appx. 891, 893, 894 (11th Cir. Sept. 11, 2013) (the Eleventh Circuit has "not extended the prison mailbox rule to administrative appeals under FOIA, and research reveals no published decisions by the Supreme Court or any other circuit court of appeals discussing the applicability of the prison mailbox rule under similar circumstances" but in that case the court did not need to reach the issue); *Boomer v. Deboo,* 473 Fed.Appx. 226, n. 1 (4th Cir. May 9, 2012) (court found it "unnecessary to evaluate whether the district court correctly concluded that the prison mailbox rule is inapplicable to FTCA administrative claims."); *Ageloff v. Reese*, No. CIVA 507CV124-DCBMTP, 2009 WL 2591622, at *3 n. 7 (S.D. Miss. Aug. 13, 2009) ("Because an administrative filing pursuant to the ARP [administrative remedy program] is not a court filing, the 'prison mailbox rule' does not apply.").

---

[3] The United States argues that the prison mailbox rule would not assist Censke in this case anyway because he did not offer any evidence that he placed his notice of tort claim in the prison mail system with pre-paid postage. *See United States v. Craig,* 368 F.3d 738, 740 (7th Cir. 2004). *Craig* involved a notice of appeal and expressly relied on the language of Rule 4 of the Federal Rules of Appellate Procedure which requires both an affidavit stating the date the notice of appeal was placed in the prison mail system and the fact that prepaid first class postage was affixed. Although the Court does not decide this question and it is certainly possible that the postage requirement could be another reason that Censke's claim was not timely, for purposes of this Motion, the Court does not rely on the postage requirement discussed in *Craig* in ruling on this case.

Several courts have held that the prison mailbox rule does not extend to administrative proceedings when precluded by a specific statutory or regulatory regime that defines when a claim is deemed filed. *See Longenette v. Krusing*, 322 F.3d 758, 762-63 (3d Cir. 2003) (statute did not define "filed" as requiring actual receipt); *Smith v. Conner,* 250 F.3d 277, 279 (5th Cir. 2001) (timeliness of appeals sent to and received by the Board of Immigration is controlled by federal regulation so prison mailbox rule did not apply); *Nigro v. Sullivan,* 40 F.3d 990, 994 (9th Cir. 1994) (prison mailbox rule did not apply where "filed" was defined in the administrative remedy federal regulations as meaning when "a receipt for it is issued"); *Williams v. Burgos*, 2007 WL 2331794, at * 3 (S.D.Ga. Aug. 13, 2007) (holding that prison mailbox rule does not apply to BOP administrative remedy appeal because "the Bureau of Prisons' regulations deem an appeal to be filed when the appeal has been logged in the Index as received."); *but see Tapia-Ortiz v. Doe,* 171 F.3d 150, 152, n.1 (2nd Cir. 1999) ("we see no difference between the filing of a court action and the filing of an administrative claim" in holding that the prison mailbox rule "applies to an FTCA administrative filing," stating that "*Houston* does not apply, of course, when there is a specific statutory regime to the contrary," but then overlooking the specific language of 28 C.F.R. § 14.2(b)).

The Court concludes that because an administrative filing pursuant to the FTCA is not a court filing, and because the BOP regulation defines presentment of a claim as when it is received by the federal agency, the "prison mailbox rule" does not apply to Censke's presentment of his SF-95 to the BOP in this case.

   4.   **Extent of Injury**

For the first time in his surreply, Censke contends that his tort claim should be deemed timely because he did not learn that he suffered nerve damage to his wrist until June 2015. If his

8

claim did not accrue until June 2015 instead of December 13, 2013, his tort claim filed on February 16, 2016, would be deemed timely. Unfortunately, Censke's new theory is not persuasive because not knowing the full extent of the injury does not delay the accrual of his claim, in light of the fact that he knew as of December 13, 2013, that he was allegedly assaulted on that date. *See Wallace v. Kato,* 549 U.S. 384, 391 (2007) ("The cause of action accrues even though the full extent of the injury is not then known or predictable.") (internal quotation omitted).

### 5. **Equitable Tolling**

Finally, the Court has considered Censke's argument that equitable tolling should render his administrative claim timely filed. A court may pause the running of a statute of limitations via equitable tolling "when a party has pursued his rights diligently but some extraordinary circumstance prevents him" from meeting the filing deadline. *United States v. Kwai Fun Wong,* 135 S.Ct. 1625, 1631 (2015) (internal quotation omitted); *see also Gray v. Zatecky,* 865 F.3d 909, 912 (7th Cir. 2017) ("Equitable tolling is available when an applicant shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing.") (internal quotation omitted).

Censke's injury occurred on December 13, 2013. Censke states in his sworn affidavit that he knew that he had two years to file his administrative claim. Dkt. [28]. He admits that he "chose not to file" his tort claim notice from USP Lee, where he was incarcerated from September 30, 2014 through October 6, 2015. Dkt. [27], p. 21; dkt. [29-1]. He asserts that during the two year limitation under § 2401(b), he was in segregation or in transit all but six months. More specifically, he states that he was held in transit without legal files or access to forms for about eight weeks in the fall of 2015.

9

Censke arrived at USP McCreary on November 9, 2015. Censke testifies in his affidavit that he asked various administrative staff at USP McCreary for the address of the North Central Region and for SF-95 forms, but nobody would provide them. Dkt. [28]. During that time, he was placed in segregated housing, and he had even less access to forms. One day, Warden Fox confiscated all of his pencils from his cell except for one dull "golf" pencil. *Id.* at p. 3, ¶ D. Censke was still able to write complaints to internal affairs. Moreover, Censke states that at this time he "was still comfortable with the fact that [his] SF-95 Administrative Claim did not need to be presented until 12-16-15, and time remained." *Id.* at p. 3, ¶ F.

Being transferred and separated from his legal papers for periods of time certainly makes it more difficult for an inmate to make timely filings, however, from December 16, 2013, the date of the injury, until September 15, 2014, Censke was confined at USP Terre Haute. He contends that during that time he was held in segregation and "[l]imited access was available." *Id.* at ¶ 14. Being confined in segregated housing, however, is not an "extraordinary" circumstance for inmates. *Gray*, 865 F.3d at 913 ("limited access to prison legal resources" while being held in administrative segregation is not "extraordinary"). Therefore, during the first nine months after the injury occurred, there is insufficient evidence to demonstrate that Censke diligently pursued his rights and that some extraordinary circumstance prevented him from filing his tort claim. In addition, for long periods of time thereafter he "chose not to file" his claim. Dkt. [27], p. 21.

"Equitable tolling is rare but it does not exist[] in name only." *Gray,* 865 F.3d at 912 (internal quotation omitted). "It is instead a highly fact-dependent area in which courts are expected to employ flexible standards on a case-by-case basis." *Id.* (internal quotation omitted). The standard is "demanding". *Id*. The Court has considered the circumstances surrounding Censke's incarceration for the two year period following the alleged assault. Censke's assertions

do not reflect that he was subjected to extraordinary circumstances which prevented him from filing a timely tort claim. As noted, there were periods of time, months in duration, during which there is no evidence of barriers to drafting and submitting a timely tort claim. Accordingly, Censke has not shown reasonable diligence nor extraordinary circumstances sufficient to warrant the rare application of equitable tolling. *See Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990) ("the principles of equitable tolling … do not extend to what is at best a garden variety claim of excusable neglect.").

## IV. CONCLUSION

Because it is undisputed that Censke's federal tort claim was received two months late, his claims are barred by the two year statute of limitations. The United States is entitled to judgment as a matter of law. Therefore, the United States' Motion for Summary Judgment, dkt. [22], must be **GRANTED.** Judgment consistent with this Entry shall now issue.

**SO ORDERED.**

Date: 9/15/2017

_[signature]_

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Thomas Andrew Censke, 10929-040
Victorville U.S. Penitentiary
Inmate Mail/Parcels
P.O. Box 3900
Adelanto, California 92301

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE
shelese.woods@usdoj.gov