UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| THOMAS ANDREW CENSKE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) No. 1:16-cv-02761-TWP-MJD |
| UNITED STATES OF AMERICA, | ) ) ) |
| Defendant. | ) |

### ORDER DENYING PLAINTIFF'S MOTION TO RECONSIDER

This matter is before the Court on the United States' motion to reconsider partial summary judgment in favor of plaintiff Thomas Censke. The United States has not shown that the Court's order arose from a manifest error of law or fact, and the motion to reconsider is **DENIED**.

## I. LEGAL STANDARD

Motions to reconsider a summary judgment ruling are brought under Federal Rule of Civil Procedure 54(b), which permits revision of non-final orders. *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012). "[M]otions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e)." *Woods v. Resnick*, 725 F.Supp.2d 809, 827 (W.D.Wis. 2010). The Seventh Circuit has summarized the role of motions to reconsider as follows:

> A motion for reconsideration performs a valuable function where the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension. A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court.

*Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citations omitted).

In other words, "Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 F. App'x 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)). Motions to reconsider "serve a limited function: to correct manifest errors of law or fact or to present *newly* discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (emphasis added). A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Id.* at 1269–70.

## II. BACKGROUND

Mr. Censke is suing the United States under the Federal Tort Claims Act for battery and medical negligence. (Dkt. 1). He alleges that on December 16, 2013, he and his cellmate were involved in a physical altercation with correctional officers in their cell at the Federal Correctional Complex in Terre Haute, Indiana ("FCC Terre Haute."). (Dkt. 100-1, at 67-97). According to Mr. Cenkse, two officers entered their cell during evening count, became aggressive, and maced them. *Id.* at 77-82. Then, a group of correctional officers returned to their cell, placed them in handcuffs, and physically assaulted them. *Id.* at 90-98. Finally, Mr. Censke was taken to a locked, segregated cell, where he was left in painful restraints for the next three days. *Id.* at 101. These restraints caused Mr. Censke to suffer abrasions on his wrists, pain, swelling, and numbness. (Dkts. 100-7 to 100-16).

The Court granted partial summary judgment to Mr. Censke on his battery claim arising from the use of restraints while he was locked in a segregated cell. (Dkt. 120). The Court identified the applicable legal standards from the Federal Tort Claims Act and Indiana tort law. *Id.* at 8-9. Under Indiana tort law, a defendant is liable for battery if he intentionally causes a harmful or offensive contact with another person. *Id.* at 8 (citing *Mullins v. Parkview Hosp., Inc.*, 865 N.E.2d

608, 610 (Ind. 2007)). Under the Indiana Tort Claims Act ("ITCA"), government officials may be immune from liability for personal injuries, but law enforcement officers are not immune from liability when they engage in excessive force. (Dkt. 120 at 8-9 citing *Mundia v. Drendall Law Office, P.C.*, 77 N.E.3d 846, 854 n. 11 (Ind. Ct. App. 2017); *Wilson v. Isaacs*, 929 N.E.2d 200, 204 (Ind. 2010); Ind. Code § 35-41-3-3(c)).

The United States did not dispute that correctional officers intentionally caused harmful or offensive contact when they placed restraints on Mr. Cenkse. *See generally* (dkt. 110 at 9-14). Instead, the United States argued that its employees were entitled to government immunity because their decision to place restraints on Mr. Censke was objectively reasonable and did not rise to the level of excessive force. *Id.* at 12 (arguing that "this case hinges on whether the BOP officers acted unreasonably in their use of force against Mr. Censke.").

The Court found that the evidence did not support a reasonable conclusion that the use of restraints was reasonable. Construing the evidence in the light most favorable to the United States, the Court found that Mr. Censke was combative when he was removed from his cell and made threatening comments during a video interview shortly thereafter. (Dkt. 120 at 10). Locking Mr. Censke in a segregated cell in response to this behavior, the Court found, was not unreasonable. *Id.*

However, the Court also found that the United States did not articulate a reasonable basis for placing Mr. Censke in painful restraints for the next three days when he was already locked inside a segregated cell. *Id.* at 10-11. There was no evidence that this cage-within-a-cage was necessary to prevent Mr. Censke from harming himself or others. *Id.* at 11. The Court considered the United States' argument that Mr. Censke had been "loud" and "agitated" during some of his

3

interactions with the medical staff but noted that the evidence did not support a reasonable conclusion that he was violent toward the medical staff during these appointments. *Id.*

Finally, the Court observed that if the United States' goal had been to protect the medical staff during these interactions, the correctional staff could have ordered Mr. Censke to present his wrists in the cuff port of his cell before the medical staff entered for each appointment. *Id.* The United States did not explain why officers did not employ this modest security measure, nor did the United States argue that periodic use of restraints was unfeasible. *Id.*

### III. DISCUSSION

In its motion to reconsider, the United States argues that the evidence supports a reasonable conclusion that the use of restraints complied with Bureau of Prisons Program Statement 5566.06, "Use of Force and Application of Restraints." (Dkt. 123 at 3-6). The United States argues, for the first time, that this program statement is entitled to deference and precludes the Court from granting partial summary judgment for Mr. Censke. *Id.*

A motion to reconsider is not an opportunity to raise arguments or defenses that could have been raised in the first instance. *Caisse Nationale de Credit Agricole*, 90 F.3d at 1269-70. The United States did not reference this program statement or raise any argument about judicial deference to administrative regulations in its brief opposing Mr. Censke's motion for summary judgment, *see generally* dkt. 110, nor did the Court base its ruling on the theory that prison officials failed to comply with these administrative regulations or that the regulations were unlawful. (*See generally* dkts. 108, 120). Raising this argument for the first time in a motion to reconsider is improper.

The United States also argues that the Court erred by "crediting Mr. Censke's assertion that the restraints were improperly applied and discounting contrary evidence in the government's

4

favor." (Dkt. 123 at 6). In doing so, the United States argues, the Court "chose to credit Mr. Censke's version of the events, finding that the restraints were applied in a way that was 'painful' and caused 'los[s of] feeling in his fingers." *Id.* at 7.

The United States fails to mention that *its own employees* documented the injuries Mr. Censke experienced as a result of these restraints. *E.g.* dkt. 100-11 (nurse "observing dime sized abrasion" on each wrist); dkt. 100-12 (nurse observes abrasions, cleans wounds); dkt. 100-13 (nurse observes "[s]welling to bilateral wrists"; restraints had to be adjusted by lieutenant); dkt. 100-16, p. 1 ("Restraints are too tight on the wrists, as the wrists have become edematous . . . Restraints loosened due to the edema.")).

The Court did not find that the restraints were applied "improperly," as the United States argues in its motion to reconsider. The Court merely observed that these restraints were painful, caused visible abrasions and swelling, and had to be continuously loosened by members of the correctional staff. These facts are not in dispute.

Finally, the United States argues that the Court misapplied the government immunity exception in the ITCA by "couching [its] summary judgment ruling in determination of whether the government 'met its burden' of showing that its use of force may have been reasonable." (Dkt. 123 at 7).

As the Indiana courts have made clear, the government immunity exception of the ITCA is an affirmative defense in derogation of common law, and a government actor asserting this defense indeed has the burden of producing evidence to prove this narrow exception:

> The assertion of immunity is an affirmative defense, and a governmental entity seeking immunity under the ITCA bears the burden of proving that its conduct falls within one of the exceptions set out in the Act. We narrowly construe immunity because it provides an exception to the general rule of liability.

*Mundia*, 77 N.E.3d at 855 n. 11 (citing *City of S. Bend v. Dollahan*, 918 N.E.2d 343, 351 (Ind. Ct. App. 2009), *trans. denied*. (cleaned up); *see also F.D. v. Indiana Dept. of Child Services*, 1 N.E.3d 131, 136 (Ind. 2013) ("Because the ITCA is in derogation of the common law, we construe it narrowly against the grant of immunity.").

In analyzing whether the evidence supported a reasonable conclusion that the United States had "met its burden" on its affirmative government immunity defense, the Court merely applied previous holdings from the Indiana Supreme Court and the Indiana Court of Appeals. This was not a "manifest error of law" and does not entitle the United States to reconsideration of the Order granting partial summary judgment in favor of Mr. Censke. Accordingly, the motion to reconsider is **DENIED**.

## IV.  CONCLUSION

The United States has not met its burden of showing that the Order granting partial summary judgment was based on a manifest error of law or fact, and its motion to reconsider, dkt. [122], is **DENIED**.

**IT IS SO ORDERED**.

Date: 7/5/2022

_____
Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

J. Taylor Kirklin
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
TKirklin@usa.doj.gov

Harmony A. Mappes
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
harmony.mappes@faegredrinker.com

Emanuel McMiller
Faegre Drinker Biddle & Reath LLP
manny.mcmiller@faegredrinker.com

Justin R. Olson
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
justin.olson2@usdoj.gov

Jason Rauch
FAEGRE DRINKER BIDDLE & REATH LLP (Indianapolis)
jason.rauch@faegredrinker.com

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov